CLERK'S COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 JUL 23 PM 2: 35

[signature]
CLERK-SANTA FE

S.V. DIXON,

    Plaintiff,

vs.      No. CV 98-725 SC/DJS

REGENTS OF THE UNIVERSITY OF
NEW MEXICO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, filed April 9, 1999 [Doc. No. 31]; Defendant's Motion for Summary Judgment Dismissing Counts I and II of the Complaint, filed April 26, 1999 [Doc. No. 37]; Defendant's Motion for Summary Judgment on Plaintiff's Request for Declaratory and Injunctive Relief, filed April 26, 1999 [Doc. No. 41]; Plaintiff's Motion for Default Judgment, filed June 29, 1999 [Doc. No. 59]; and Plaintiff's Contested Motion to Prohibit Defendant from Calling Witnesses, filed July 15, 1999 [Doc. No. 68]. The Court, having read the motions, memoranda, and exhibits submitted by the parties, and being apprised of the applicable law, concludes that, for the reasons set forth below, Defendant's two substantive motions should be granted. All other pending motions will be denied.

72

## I. BACKGROUND

Plaintiff, Susan Dixon, was a medical student at the University of New Mexico School of Medicine (the School of Medicine), where she successfully completed two years of medical school, although not without substantial difficulty. In November 1994 she was promoted to the third year. During this time, Plaintiff was being treated for clinical depression. The third year requirements included rotations in internal medicine, pediatrics, surgery, OB/GYN, family practice, and neuropsychiatry. While Plaintiff passed some of the third year rotations, Plaintiff had cognitive and noncognitive difficulties. She failed the written exam in her surgical rotation, and received an unsatisfactory grade in her OB/GYN rotation because she failed the final exam and had severe interpersonal problems with the OB/GYN department. In April 1995, the Committee on Student Promotions and Evaluations II (CSEP II) required Plaintiff to take a six-month leave of absence, to which Plaintiff agreed.

In October 1995 Plaintiff was reinstated conditionally, as provided in a letter to Plaintiff from the Chair of the CSEP II, Dr. Berthold E. Umland. Plaintiff was required to repeat the entire third year, even rotations she had passed, and was placed under special scrutiny to watch for behavioral and academic problems. Plaintiff also was required to pass all course work for the remainder of her medical school enrollment. Plaintiff further was required to continue her therapy sessions with her therapist, Dr. Regina Carroll.

In her second time through the third year, Plaintiff passed all of the rotations, except for the OB/GYN rotation. Plaintiff passed two of the three components of the OB/GYN grade – the Objective Structured Clinical Exam (OSCE) and the clinical evaluation – but failed the written shelf-board exam. Plaintiff was given a temporary grade of no credit for the OB/GYN rotation. Plaintiff was allowed to retake the exam on October 28, 1996, and she passed. However, Plaintiff's final grade for the rotation, given on February 18, 1997 by letter, was an unsatisfactory because of alleged continued cognitive and noncognitive problems. Evidence of Plaintiff's continued noncognitive problems included incidents on July 15, August 9, and August 15, 1996, in which Plaintiff became angry or cried.

On November 22 or 26, 1996, Plaintiff and Dr. Carroll met with Dr. Umland. At this meeting Plaintiff was informed she would be dismissed from the School of Medicine because of "global issues" concerning her performance. Plaintiff then was scheduled to meet with the CSEP II on December 3, 1996.

On December 3, 1996, Plaintiff attended the CSEP II meeting, accompanied by Dr. Carroll. At the meeting, faculty voiced concerns about Plaintiff's unprofessional behavior and cognitive abilities before and after her leave of absence. Members of the CSEP II questioned Plaintiff in response to the voiced concerns. After the CSEP II meeting, Plaintiff was notified in writing that the CSEP II had decided that she should be dismissed from the School of Medicine for the noncognitive reasons discussed at the

December 3 meeting. Plaintiff was informed her appeal rights were contained in the Student Handbook.

Plaintiff filed an untimely appeal. Nonetheless, the appeal was heard by the Education Council on February 18, 1997. Plaintiff submitted a written packet and gave an oral presentation to the Education Council. Dr. Umland presented the reasons for the CSEP II's decision. The Education Council was permitted to question Plaintiff and Umland, and both parties were allowed to summarize their positions. Plaintiff also was informed that her final grade for the OB/GYN rotation was an unsatisfactory. The Education Council upheld the CSEP II's decision to dismiss Plaintiff, and notified Plaintiff by letter of its decision and Plaintiff's right to appeal to the Dean of the School of Medicine, Paul B. Roth.

In considering Plaintiff's appeal, Dean Roth met with Plaintiff, met with individuals identified by Plaintiff, and reviewed Plaintiff's entire medical school record and the decisions of the CSEP II and the Educational Council, with the exception of the Education Council's findings of fact dated February 24, 1997. Dean Roth upheld the decision of the Education Council to dismiss Plaintiff because of her marginal academic performance over a five-year period and her noncognitive performance difficulties. Plaintiff was notified of the Dean's decision by letter dated March 20, 1997.

* * * *

Plaintiff brings this case under (1) Title II of the Americans with Disabilities

4

Act, 42 U.S.C. § 12101 *et seq.*, alleging that she was not afforded reasonable accommodation for her disability of clinical depression (Count I); (2) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, alleging she was not given reasonable accommodation, and that Defendants used gross misjudgment and/or bad faith in expelling her (Count II); and (3) the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging she had a protected property and liberty interest in her continued education, and that she was dismissed without due process or equal protection in violation of the Fifth and Fourteenth Amendments to the United States Constitution (Count III).

## II. LEGAL STANDARD

A motion for summary judgment should be granted only when there is no genuine issue of material fact, and, as a matter of law, the moving party is entitled to judgment. See Fed. R. Civ. P. 56(c). A court's job in ruling on a motion for summary judgment is not to weigh the evidence, make credibility determinations, or draw inferences from the facts, but, rather, to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 255 (1986). The inquiry a court must make is "whether the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. If a court finds that there are genuine and material factual issues, these issues should be resolved by the fact finder, and summary judgment is precluded. See id. at 248.

When ruling on a motion for summary judgment, a court must construe the facts in the light most favorable to the nonmovant. See Magnum Foods, Inc. v. Continental Casualty Co., 36 F.3d 1491, 1497 (10th Cir. 1994). All doubts must be resolved in favor of the existence of triable issues. See World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only then does the burden shift to the nonmovant to come forward with evidence showing that there is a genuine issue of material fact. See Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

## III. ADA AND REHABILITATION ACT CLAIMS (COUNTS I AND II)

### A. Exhaustion of Remedies

Defendant seeks judgment for failure of Plaintiff to exhaust her administrative remedies under Title II of the American with Disabilities Act (ADA) (Count I) and the Rehabilitation Act (Count II). Defendant contends that before filing suit, a plaintiff first must file a charge of discrimination with a state or federal agency, and that Plaintiff failed to file such a charge with either the EEOC or the New Mexico Human Rights Commission. Plaintiff contends that exhaustion is not required for Title II ADA or Rehabilitation Act claims in the non-federal employee context.

It is well-established that exhaustion of administrative remedies is not required for Rehabilitation Act actions in the non-federal employee context. See Pushkin v.

6

Regents of the Univ. of Colo., 658 F.2d 1372, 1381-82 (10th Cir. 1981) (enforcement procedures of the Rehabilitation Act do not require exhaustion of administrative remedies by non-federal employees). Furthermore, other courts have held that exhaustion of administrative remedies is not required for actions brought under Title II of the ADA, which is modeled in relevant part after the Rehabilitation Act. See Davoll v. Webb, 943 F.Supp. 1289, 1297-98 & n.4 (1297) (D.Colo. 1996); see also Petersen v. University of Wis. Bd. of Regents, 818 F.Supp. 1276, 1278-79 (W.D.Wis. 1993) (Department of Justice regulations interpreting Title II of the ADA state that a plaintiff may proceed directly to federal court, and that exhaustion of administrative remedies is optional.). I agree with this conclusion. Therefore, exhaustion requirements do not apply to this case, and Defendant's Exhaustion Motion will be denied.

**B.     Substantive Claims - ADA**

Title II of the ADA ("Public Services") provides in relevant part: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It is uncontested that Defendant is a public entity subject to suit under Title II. To establish a claim under the ADA, Plaintiff must demonstrate that: (1) she has a "disability," as that term is defined by the ADA; (2) she is a "qualified individual," as that phrase is defined by the ADA; and (3) the School of

7

Medicine discriminated against her in its expulsion decision because of her alleged disability. See Zukle v. Regents of Univ. of Calif., 166 F.3d 1041, 1045 (9th Cir. 1999). Cf. Sutton v. United Airlines, Inc., 130 F.3d 893, 897 (10th Cir. 1997), aff'd, __ U.S. __, 119 S.Ct. 2139 (1999).

"Disability" is a term of art. See Poindexter v. Atchison, Topeka, and Santa Fe Ry. Co., 168 F.3d 1228, 1230 (10th Cir. 1999). A "disability" under the ADA is: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2); see 28 C.F.R. § 35.104; 28 C.F.R. pt. 36, app. B; see also Bragdon v. Abbott, 524 U.S. 624, ___, 118 S.Ct. 2196, 2202 (1998); Poindexter, 168 F.3d at 1230. Although claims of disability under subparagraphs (A), (B), or (C) are analyzed under separate frameworks, the three analyses share a common prong – whether the alleged impairment (actual, past, or imputed) "substantially limited" a "major life activity" of the individual. See 28 C.F.R. § 35.104; 28 C.F.R. pt. 36, app. B. "Substantially limited" and "major life activity" are both terms of art.

Assuming the impairment at issue here is Plaintiff's clinical depression and the "major life activity" at issue is Plaintiff's ability to learn or perform in an academic context, Plaintiff has failed to show that her depression "substantially limited" her in her ability to learn or perform academically. See McGuinness v. University of N.M.

Sch. of Med., 170 F.3d 974, 978 (10th Cir. 1998), cert. denied, __ U.S. ___, 119 S.Ct. 1357 (1999). Plaintiff has failed to allege or offer any evidence that her clinical depression would impede her ability to attain an academic degree other than a M.D., or pursue a career other than as a physician. Plaintiff's contentions about her clinical depression go only to the effect it had on her ability to perform as a medical student. "For purposes of the ADA, inability to pursue one career, such as medicine, does not constitute a severe impact on an individual's life." McGuinness, 170 F.3d at 979. Therefore, because Plaintiff is not disabled as that term is defined under Tenth Circuit law, I will grant Defendant's motion for summary judgment as to Count I of Plaintiff's Amended Complaint.

## C. Substantive Claims - Rehabilitation Act

Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States, as defined in [§ 705(20)] of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The Rehabilitation Act applies to public universities such as the School of Medicine. See id. § 794(b); see also McGuinness, 170 F.3d at 980. "Disability" is defined under the Rehabilitation Act in the same manner it is defined under the ADA. See McGuinness, 170 F.3d at 980 (citing Bragdon, 524 U.S. at ___, 118 S.Ct. at 2202, and Siemon v. AT&T Corp.,

117 F.3d 1173, 1176 (10th Cir. 1997)). Consequently, Plaintiff's Rehabilitation Act claim fails, as a matter of law, for the same reason her Title II ADA claim fails – Plaintiff has not made any showing that her clinical depression precludes her from participating in federally funded programs other than medical school. See McGuinness, 170 F.3d at 980. Therefore, I will grant Defendant's motion for summary judgment as to Count II of Plaintiff's Amended Complaint.

## IV. SECTION 1983 (COUNT III)

Defendant contends that I previously dismissed Count III, which alleges civil rights violations pursuant to 42 U.S.C. § 1983. This contention is inaccurate. I concluded that Defendant is not a "person" for purposes of awarding damages under § 1983, and I dismissed Count III only insofar as it sought an award of damages. However, I noted that in Count III, Plaintiff sought injunctive relief against Defendant in its official capacity for a violation of federal law, and that part of the claim was not dismissed. The injunctive relief sought by Plaintiff is readmittance to the School of Medicine.

Defendant moves for summary judgment on Plaintiff's request for declaratory and injunctive relief in Count III of the Amended Complaint. Because I conclude the School of Medicine did not violate Plaintiff's rights under the Due Process or Equal Protection Clauses, I will grant Defendant's motion.

A.  **Due Process**

The Due Process Clause applies when government has deprived an individual of an interest in property or liberty. Because I conclude that the procedures used by the School of Medicine in dismissing Plaintiff fully met the narrow requirements of procedural due process in the educational context, I will assume both interests are present here. See Board of Curators of the Univ. of Mo. v. Horowitz, 435 U.S. 78, 83-84 (1978) (issue not reached); Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 222-23 (1985) (same).

1.  **Procedural Due Process**

Defendant contends that Plaintiff received all the procedural process due her under the Constitution – notice, the opportunity to be heard, and a decision based on professional judgment. Plaintiff was notified by the Chair of the CSEP II that she was to be dismissed. Plaintiff and her therapist attended the CSPE II meeting, where reasons for her dismissal were discussed and Plaintiff was given an opportunity to respond and Dr. Carroll spoke on her behalf. Furthermore, the decision of the CSPE II was carefully reviewed on appeal by the Education Council and by the Dean of the School of Medicine, and affirmed both times.

Plaintiff responds that any notice she received about her impending dismissal or of the charges against her was inadequate and ambiguous, that she had an insufficient opportunity to be heard or show her side of the story, and that the decision to dismiss

11

her was not made impartially or carefully. Regarding notice of faculty concern about her performance or conduct and that she was to be dismissed, Plaintiff alleges that after her readmittance to the School of Medicine she received no feedback that she was performing unsatisfactorily or was in danger of being dismissed. The feedback she received was positive and that her performance had improved. In fact, with exception of the contested OB/GYN rotation, she passed all her third year rotations, receiving a grade of good in two of them. Furthermore, she was permitted to retake the OB/GYN exam she had failed, and was never informed that if she only marginally passed the exam she would be dismissed. As for the three minor incidents in July and August of 1996, Plaintiff was never informed that she had acted unprofessionally or that the incidents would be grounds for dismissal. Additionally, Plaintiff was never informed that her cognitive and noncognitive performance before her leave of absence would be considered in the School of Medicine's evaluation of her after she returned. She was told only that she would be dismissed if she failed to pass her course work – and by passing all three components of the OB/GYN grade, she passed the rotation. Finally, in her meeting with Dr. Umland in November 1996 she was given no information regarding the grounds for her impending dismissal, she was not permitted to see her records, and her final OB/GYN grade was withheld from her.

Regarding the CSPE II meeting, Plaintiff contends that she was not given an opportunity to show her side of the story or question those who spoke against her, and

she was not permitted to be represented by counsel. Only members of the OB/GYN faculty voiced concerns about her, and the majority of the concerns related to incidents that occurred before her leave of absence. As for the Education Council appeal, Plaintiff contends that she was given insufficient time to present the documents in her written packet or to present her arguments, and that the evidence against her was hearsay. Furthermore, it was not until the time of this appeal that she received her final OB/GYN rotation grade. The grade was provided improperly in the form of a letter and stated incorrectly that she received a grade of satisfactory on a presentation when she had received a good. Additionally, while the Education Council notified her it was affirming her dismissal, its findings of facts prepared by the Chair were not provided to Plaintiff until she filed this lawsuit. The findings of fact, addressed to the University Counsel, stated that the OB/GYN Department's actions regarding the provision of Plaintiff's final OB/GYN grade was "unconscionable" and placed the Education Council and the CSEP II in "an untenable position." Pl. Resp. Statement Mat. Facts, Exh. 2. The Education Council Chair also stated the OB/GYN Department should not have allowed Plaintiff to retake the OB/GYN written exam in October 1997 if it was not prepared to pass her if she successfully passed the exam. As for the review of Plaintiff's appeal by the Dean of the School of Medicine, Plaintiff contends that it was inadequate because the Dean was not an independent tribunal and because the decision was made *ex parte*, with no oral hearing.

Plaintiff further contends that under the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g and 34 C.F.R. §§ 99.21-99.22, and the School of Medicine's Due Process Statement in the Student Handbook, she had a right to a full-blown hearing and a right to counsel and cross-examination.

The Supreme Court has enunciated two separate standards for reviewing due process claims in an academic context. If a student is dismissed from an educational institution for academic reasons, then: (1) the student must have been given prior notice of faculty dissatisfaction with her performance and the possibility of her dismissal; and (2) the decision to dismiss the student must have been careful and deliberate, i.e., a product of professional judgment. See Horowitz, 435 U.S. at 85. No hearing is required and extreme deference to the administrative decision must be given by the reviewing court. See id. at 85-89 & nn. 3 & 4. If a student is dismissed from an educational institution for disciplinary or misconduct reasons, the standard is more stringent: (1) the student must have had oral or written notice of the charges; (2) if the student denied the charges, the student must have been given an explanation of the evidence the authorities had against her; and (3) the student must have been given an opportunity to present her side of the story. See id. at 85-86. While a dismissal for disciplinary purposes may call for a hearing, there is no requirement that a formal hearing be held or that the student be allowed representation by counsel or cross-examination of witnesses. See id. at 87, 88-89; see also Goss v. Lopez, 419 U.S. 565,

584 (1975) (all that is required is an "informal give-and-take" between the student and the administrative body). Furthermore, while the disciplinary dismissal standard is less deferential to school authorities than the academic dismissal standard, a degree of deference is still required. See Horowitz, 435 U.S at 89.

Defendant contends that both academic and misconduct reasons for dismissal are present here. Because the Supreme Court advocates a flexible approach, I will apply both standards to this case.

Defendant has satisfied the two procedural requirements for an academic dismissal. School authorities may provide notice to the student in any form. See Gaspar v. Bouton, 513 F.2d 843, 851 (10th Cir. 1975). "All that is required is that the student be made aware prior to [dismissal] of [her] failure or impending failure to meet [academic] standards." Gaspar, 513 F.2d at 851. Plaintiff received such notice. Plaintiff knew generally of faculty dissatisfaction with her performance before and after her leave of absence. In the Student Evaluation given to Plaintiff for her first OB/GYN rotation in 1995, the OB/GYN Clerkship Director, Dr. George J. Gilsen, stated that not only had Plaintiff performed poorly in the rotation, cognitively and noncognitively, but also that an assessment may be in order to see whether medicine was the most appropriate career choice for Plaintiff. Plaintiff was readmitted conditionally after her leave of absence and Plaintiff knew she had been placed on a watch list for academic and behavioral problems. Plaintiff also received comments from faculty during her

1996 rotations regarding problems with her performance, as is evidenced by Plaintiff's statements to Dr. Carroll during therapy sessions and by at least one evaluation form received by Plaintiff. Finally, in November 1996, Plaintiff was given notice by Dr. Umland that she would be dismissed. I conclude that, notwithstanding the alleged deficiencies in the notice provided Plaintiff by the School of Medicine, she received the minimal amount due. That the School of Medicine could have done more does not mean that it did not do enough under the Constitution.

The decision to dismiss Plaintiff by the School of Medicine was careful and deliberate. The initial decision maker, the CSEP II, heard faculty concerns at a meeting which Plaintiff and her therapist attended, and it made findings to support its decision to dismiss Plaintiff. The Education Council reviewed the CSEP II's decision on appeal. Additionally, the Dean of the School of Medicine met with Plaintiff and with individuals identified by Plaintiff, reviewed the minutes or transcript of the CSEP II meeting and Education Council appeal, and reviewed Plaintiff's medical school record. There is no indication that the decision to dismiss Plaintiff, either initially or on appeal, was made haphazardly or without thought or professional judgment. Although more procedure might have been desirable, all the procedural process required of Defendant was provided to Plaintiff.

Furthermore, even if the more stringent standard required for disciplinary dismissals is applied to this case, I still must conclude that Plaintiff was afforded the

minimum procedural process due. She received notice of the charges, an explanation of the evidence the School of Medicine had, and an opportunity to present her side of the story both orally and/or through written documentation at the CSEP II meeting, in her Education Council appeal, and in her appeal to Dean Roth.

I decide, therefore, that under the narrow Supreme Court standards discussed above, no violation of Plaintiff's procedural due process rights occurred. While the School of Medicine's actions or omissions may support Plaintiff's state court breach of contract action, or an administrative claim under FERPA, they do not rise to the level of a constitutional procedural due process violation.

2. Substantive Due Process

A student's substantive due process rights may be violated if she was arbitrarily dismissed, or if in her dismissal there was such a substantial departure from accepted academic norms as to demonstrate that the school administrators did not actually exercise professional judgment. See Ewing, 474 U.S. at 225 (assuming existence of substantive due process right in school dismissal context); Horowitz, 435 U.S. at 956 (same); Harris, 798 F.2d at 424. The standard of review, however, is very narrow. See Van de Zilver v. Rutgers Univ., 971 F.Supp. 925, 934 (D.N.J. 1997). A lack of professional judgment is evidenced if the administrator's decision to dismiss the student was beyond the pale, capricious, or based on discrimination, ill-will, or bad faith. See Ewing, 474 U.S. at 225-28. As I have stated earlier, the conduct of the School of

Medicine may support Plaintiff's state court breach of contract claim. However, given the cognitive and noncognitive difficulties which the School of Medicine felt Plaintiff had, I am not compelled to find that the School of Medicine's dismissal of Plaintiff was done in bad faith, capriciously, or egregiously, or that the School's decision substantially departed from the academic norm. I further note that there is no due process requirement that a school's dismissal decision be correct, but only that it be properly rendered so as to reduce the risk of error. Therefore, because the School of Medicine's decision to dismiss Plaintiff was a product of professional judgment, Plaintiff's substantive due process claim fails.

**B.     Equal Protection**

Plaintiff contends that her rights under the Equal Protection Clause have been violated by the School of Medicine in its decision to dismiss her. Plaintiff's claim lacks merit. Plaintiff has failed to demonstrate that she was treated differently from other similarly situated students. See Southern Disposal, Inc. v. Texas Waste Mgm't, 161 F.3d 1259, 1266 (10th Cir. 1998).

**V.     PLAINTIFF'S MOTIONS**

Plaintiff's Motion for Default Judgment will be denied. Defendant was not required to file an amended answer to Plaintiff's Amended Complaint. The Amended Complaint was ordered by this Court, and was necessary only so that Plaintiff could list the true name of Plaintiff. Plaintiff's Contested Motion to Prohibit Defendant from

Calling Witnesses will be denied as moot, given the Court's rulings in this Opinion on Defendant's motions for summary judgment.

**NOW THEREFORE IT IS ORDERED** that Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, filed April 9, 1999 [Doc. No. 31], is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment Dismissing Counts I and II of the Complaint, filed April 26, 1999 [Doc. No. 37], is GRANTED. Summary Judgment will be entered in connection with this Order.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's Request for Declaratory and Injunctive Relief, filed April 26, 1999 [Doc. No. 41], is GRANTED. Summary Judgment will be entered in connection with this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment, filed June 29, 1999 [Doc. No. 59], is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Contested Motion to Prohibit Defendant From Calling Witnesses, filed July 15, 1999 [Doc. No. 68], is DENIED as moot.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff: Eric D. Dixon, Portales, N.M.

Counsel for Defendant: Paula I. Forney, STATE OF NEW MEXICO RMD-LEGAL BUREAU, Santa Fe, N.M., and Ann Maggiore, STATE OF NEW MEXICO RMD-LEGAL BUREAU, Santa Fe, N.M.